UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| Antonio Harris, | Civil Action No.: |
| | Judge: |
| Plaintiff, | |
| vs. | |
| Jacob Brown, in his individual capacity as a Louisiana State Police trooper; Dakota DeMoss, in his individual capacity as a Louisiana State Police trooper; George Harper, in his individual capacity as a Louisiana State Police trooper; Lamar Davis, in his individual and official capacity as the Louisiana State Police Superintendent; the Louisiana State Police; Richland Parish Sheriff's Office; and the Richland Parish Detention Center; John Doe Correctional Officers in their individual capacity as Richland Parish Correctional Officers | Magistrate Judge: |
| Defendants. | Jury Trial<br>*Under Fed. R. Civ 38(b)* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## **COMPLAINT FOR DAMAGES**

For his complaint, Plaintiff Antonio Harris, by and through his attorneys, states and alleges as follows:

### INTRODUCTION

1. This cause of action arises out of the vicious beating by four Louisiana

State Police troopers of Antonio Harris following his surrender from his vehicle at approximately 5:45 p.m. near Interstate-20 on the border of Richland and Franklin Parish.

2.  This cause of action is for money damages and brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of state law of Antonio Harris' constitutional rights secured by the Fourth and Fourteenth Amendments to the United States Constitution against (1) Defendants Jacob Brown ("Brown"), Dakota DeMoss ("DeMoss"), and George Harper ("Harper"), in their respective capacities as duly certified law enforcement officers employed by the Louisiana State Police (collectively the " Defendant Officers"), for their respective violations of Mr. Harris's right to be free from the use of excessive force, intentional in this case; (2) Superintendent Lamar Davis and the Louisiana State Police for the negligent hiring, supervision, and retention of officers with a history of violating the rights of citizens in their custody, care or control; and (3) Defendant Louisiana State Police for its unconstitutional policies, customs, and/or practices.

## JURISDICTION AND VENUE

3.  This court has jurisdiction over federal questions pursuant to 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. §§ 1983, 1988. Further, Antonio Harris is a resident of Mississippi and the defendants are residents of Louisiana and the amount sought

is in excess of $75,000. There is complete diversity among the parties and the amount in controversy is in excess of $75,000.

4. Venue is proper in this Court under 28 U.S.C. §1391(b) because all incidents, events, and occurrences giving rise to this action occurred in the Western District of Louisiana.

## THE PARTIES

5. At all times relevant hereto, Mr. Harris was a citizen of the United States and resided in the city of Jackson, state of Mississippi.

6. The Louisiana State Police is and was at all times a Louisiana agency, organized and existing under and by virtue of the laws of Louisiana.

7. Jacob Brown is and was at all time material hereto a citizen of the United States and the state of Louisiana.

8. Brown was at all times material hereto employed by the Louisiana State Police as a duly appointed and sworn police officer and was acting in his individual capacity and/or under color of state law, and within the scope of his employment.

9. Dakota DeMoss is and was at all time material hereto a citizen of the United States and the state of Louisiana.

10. DeMoss was at all times material hereto employed by the Louisiana State Police as a duly appointed and sworn police officer and was acting in his individual capacity and/or under color of state law, and within the scope of his employment.

11. George Harper is and was at all time material hereto a citizen of the United States and the state of Louisiana.

12. Harper was at all times material hereto employed by the Louisiana State Police as a duly appointed and sworn police officer and was acting in his individual capacity and/or under color of state law, and within the scope of his employment.

13. Colonel Lamar Davis is and was at all time material hereto a citizen of the United States and the state of Louisiana.

14. Davis was at all times material hereto employed by the Louisiana State Police as a duly appointed and sworn police officer, appointed by the Governor of Louisiana as the Superintendent of the Louisiana State Police and was acting in his individual capacity and/or under color of state law, and within the scope of his employment.

## FACTUAL ALLEGATIONS

15. At approximately 5:30 p.m. on May 23, 2020, Defendant Officer Brown, an officer with a record of excessive force initiated a traffic stop on Antonio Harris claiming that he was drifting between lanes on Interstate-20 in Richland Parish, Louisiana.

16. When Brown claimed that Harris had warrants for multiple firearms violations in Mississippi, it scared Harris and Harris jumped in his car and fled the scene.

17. Approximately twenty-nine miles later, the Louisiana State Police deployed a "tire deflation device" and it caused Harris's tries to deflate and to drive off the side of the rode.

18. Harris, realizing the chase was over, stopped his vehicle, got out and immediately surrendered to the Defendants by laying face down in the prone position extending his arms from his body and his legs spread apart.

19. Notwithstanding his immediate surrender, Defendant DeMoss delivered a knee strike to Harris side area and slapped Harris in the face. Defendant DeMoss then turned off his body camera.

20. Next, came Defendant Harper delivering closed fist strikes, while carrying his police-issued flashlight, to Harris's Head over and over again. Defendant Harper then flipped his body camera face down.

21. Finally, Defendant Jacob Brown wanted in on the action of beating Someone handcuffed, surrendered and in custody. Brown knelt his knee neat the top of Harris' head and began pulling his hair while saying in an expletive-laten tirade, "I am going to punish you."

22. At no time did Mr. Harris resist arrest following the chase from police. Harris promptly surrendered, legs spread apart, and arms spread apart from his body.

23. The alleged arrest warrants in Mississippi for which Defendant Brown, a

known violent officer, sought to take Mr. Harris into custody was void. First, Mississippi was not seeking extradition on the alleged warrants. Secondly, the warrants were for an Antonia Harris (not Antonio Harris) and the alleged firearms crime happened when Mr. Harris was five years old.

24. Following the vicious beating they gave Mr. Harris, the Officers laughed and joked about their use of excessive force and utter disregard the constitutional rights of Mr. Harris.

25. Defendant Brown later bragged to his co-defendants, after telling Harris that he was going to punish him, "he gonna be sore tomorrow for sure" . . . "warms my heart knowing we could educate that young man", and "BET he won't run from a full-grown bear again" in reference to the beating that he and the defendant gave to Mr. Harris.

26. Defendant DeMoss in response to defendant Harper telling the co-defendants that Mr. Harris was silent at the Richland Parish detention center, exclaimed that Harris was "still digesting that ass whoopin." DeMoss further gloated, "He's gonna have nightmares for a long time" and "Bet he don't even cross into LA anymore" in reference to the Harris beating.

27. Defendant Harper boasted that "He gonna spread the word" in reference to the Harris beating.

28. In all, the defendants exchanged fourteen text messages boasting,

bragging, and laughing about beating and mocking Harris.

29. The Defendants then each materially misrepresented the facts of Mr. Harris' immediate surrender by producing, writing, and signing off on "wholly untrue" reports falsely claiming that Harris was resisting and continuing to flee, event after the chase ended.

30. The Defendants each sought to conceal from investigators that there was body cam video.

31. After the beating by defendants, Mr. Harris was in extreme pain, coughing up blood and requesting medical assistance from the Richland Parish jail. Harris did not receive medical assistance as the defendants bragged about the beating they gave to Harris.

32. Mr. Harris' traumatic beating was compounded by a continuous false detention in Richland Parish who refused to provide Mr. Harris with basic medical attention as he continued to cough, urinate, and defecate blood. Mr. Harris was then extradited to Mississippi for a crime he did not commit and that happened when Mr. Harris was 5 years old by a female suspect.

### A. Louisiana State Police and Defendant Davis' Failure to Properly Discipline or Terminate Dangerous Officers

33. Defendants Brown, DeMoss, and Harper are all officers assigned to Troop F of the Louisiana State Police.

34. Defendant Davis is the superintendent of the Louisiana State police with

Supervisory responsibility over all troops within the Louisiana State Police, including Troop F and his co-defendants.

35. The Louisiana State Police and Defendant Davis frequently fails to Terminate or discipline officers who demonstrate patterns of misconduct.

36. Defendant Brown has been the subject of multiple citizen complaints, which had previously resulted in little to no discipline.

37. Prior to the vicious beating of Harris, Defendant Brown was facing investigations in two other excessive forces cases and was the subject of a lawsuit for his use of excessive force.

38. Defendant DeMoss has been the subject of numerous citizen Complaints and named in the Department of Justice's investigation of the death Ronald Green, who died after Louisiana State Police kicked and dragged a handcuffed Green to his death in Franklin Parish. Defendant DeMoss is on administrative leave.

39. Defendant Harper and a history of complaints and, like his co-defendants patently lied under penalty of perjury, betraying his badge and violating his oath when producing "wholly untrue" reports saying that Harris was resisting arrest and continuing to flea when they arrested him. Harper was placed on administrative leave.

40. Despite their repeated violations of the constitutional rights of suspects,

Defendant Lamar Davis and the Louisiana State Patrol took little to no disciplinary actions against these officers. These officers were allowed to continue patrolling as members of Troop F under the color of law as duly sworn police officers and repeated their pattern of intentional excessive force which led to the physical and psychological injuries of Mr. Harris.

## Count I – 42 U.S.C. §1983 – Fourth Amendment Violations

41. Plaintiff incorporates and re-alleges all preceding paragraphs as though fully pleaded herein.

42. The conduct by the defendant officers constituted excessive and deadly force in violation of the Fourth Amendment of the United States Constitution, and clearly established law.

43. At all material times Defendant Brown, Harper and DeMoss were each acting under color of state law, as agents of Louisiana, and within the scope of their employment and authority as duly certified law enforcement officers of the State of Louisiana.

44. At all material times, Brown, Harper and DeMoss had no reason to believe that Mr. Harris was armed or dangerous.

45. At all material times, Brown did not have a reasonable fear of imminent bodily harm when he struck Mr. Harris, nor did Brown have a reasonable belied that any other person was in danger of imminent bodily danger from Mr. Harris.

46. At all material times, DeMoss did not have a reasonable fear of imminent bodily harm when they delivered a knee strike and slapped Harris in the face before turning off his body camera footage to conceal his misdeeds. Nor did DeMoss have a reasonable belief that any other person was in danger of imminent bodily danger from Mr. Harris.

47. Every reasonable officer would have known that using force against a Suspect who had fully surrendered in the prone positions with his hands away from his body and his legs spread apart and who is not resisting arrest constitutes excessive force in violation of the Fourth Amendment.

48. The defendants' use of force in beating a surrendered Mr. Harris was objectively unreasonable and violated clearly established law.

49. It was objectively unreasonable for DeMoss, Brown and Harper to strike Mr. Harris with a closed fist reinforced by a flashlight, to knee him in the face, pull his hair, slap him, and to attempt conceal their actions by turning off or redirecting the audio and video of their body cameras.

50. It was a violation of Mr. Harris Fourth and Fourteenth Amendment Rights for DeMoss, Harper, and Brown not to render aid following Mr. Harris' cries for medical assistance and his visible injuries from their intentional beating of Mr. Harris.

51. As a result of DeMoss, Harper, and Brown's unjustified, excessive, and

illegal use of force, Mr. Harris experienced conscious pain and suffering.

52. In addition to these uses of unjustified, excessive and illegal force, each of the Defendant Officers had a duty to intervene on behalf of a citizen whose constitutional rights were being violated in their presence by another officer.

53. DeMoss, Brown, and Harper each recognized, courtesy of over 14 messages they exchanged with one another following the Harris beating, that the force they used on Harris would cause nightmares, physical pain, and psychological trauma because it was excessive and unreasonable under the circumstances.

54. Defendants DeMoss, Harper, and Brown each observed and were in a position to intervene to stop the use of constitutionally unreasonable force against Mr. Harris.

55. None of the Defendant Officers ever had a reasonable fear of imminent bodily harm, nor did they have a reasonable belief that any other person was in danger of imminent bodily danger from Mr. Harris at ant point in time.

56. As a result of the Defendant Officers failure to intervene in the excessive use of force, Mr. Harris experienced conscious pain and suffering and psychological trauma.

57. As a direct and proximate result of the acts and omissions described

herein, Mr. Harris suffered compensatory and special damages as defined under federal common law and in an amount to be determined by the jury.

58. Punitive damages are available against the Defendant Officers and are hereby claimed as a matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1983).

59. Plaintiff is entitled to recovery of costs, including reasonable attorneys' fees under 42 U.S.C. § 1988.

**COUNT II – La. C.C. art 2315 – Negligent Training, Hiring and Supervision**

60. Plaintiff hereby incorporates and re-alleges all preceding paragraphs as though fully pleaded herein.

61. At all times relevant hereto, defendants were employed by the Louisiana State Police as duly sworn officers of the Louisiana State Police.

62. At all times relevant hereto, defendant Colonel Lamar Davis was the Superintendent of the Louisiana State Police and in accord with the official Louisiana State Police organization chart, attached as Exhibit A, Colonel Davis is responsible for oversight of all officers in his command under the Louisiana State Police, including Officers DeMoss, Brown, and Harper.

63. Colonel Lamar Davis and the Louisiana State Police are vested with all

of the relevant powers as a police agency with the establishment, maintenance, appointment, removal, discipline, control, and supervision of the police force, subject to some limitations and provisions under relevant Louisiana law.

64. Defendant Davis and the Louisiana State Police had final policymaking authority with regard to establishing written policies and training programs governing the conduct of Louisiana State Police performing police functions.

65. Defendant Davis, as the Superintendent and supervisor of DeMoss, Brown, and Harper had knowledge of these officers' unconstitutional patterns and practices and knew that keeping them employed and failing to take appropriate disciplinary actions against these officers gave rise to a risk of violation of citizens' federal rights.

66. Defendant Davis and the Louisiana State Police made a deliberate and/or conscious decision to disregard the known risk of harm that would result from the defendants continued unconstitutional patterns and practices and was deliberately indifferent to and/or tacitly authorized the same.

67. On or prior to May 22, 2020, Louisiana State Police and Colonel Davis, with deliberate indifference to the rights of arrestees, detainees, and the like, tolerated, permitted, failed to correct, promoted or ratified and number of customs, patterns, or practices of their co-defendants that failed to provide for the safety of

arrestees, detainees, and the like during arrest, including but not limited to the handcuffing and restraint process.

68. On or prior to May 22, 2020, Colonel Davis and the Louisiana State Police, with deliberate indifference to the rights of arrestees, detainees, and the like, tolerated, permitted, failed to correct, promoted, or ratified a number of customs, patterns, or practices that condoned and required officers to turn a blind eye to and not intervene with the use of excessive force by their co-defendants.

69. On or prior to May 22, 2020, Colonel David and the Louisiana State Police with deliberate indifference to the rights of arrestees, detainees, and the like, tolerated, permitted, failed to correct, promoted, or ratified a number of customs, patterns, or practices that shall be further identified in discovery.

70. Colonel Davis and Louisiana State Police with deliberate indifference to the rights of detainees, arrestees, and the like continued to employ DeMoss, Brown and Harper despite knowledge of their repeated unconstitutional, unlawful, or other improper conduct.

71. Colonel Davis and the Louisiana State Police had the power to terminate or appropriately discipline DeMoss, Brown, and Harper for their conduct prior to May 22, 2020 but failed to do so despite their knowledge of a pattern of complaints regarding excessive force.

72. By refusing to appropriately discipline or terminate DeMoss, Harper, and

Brown caused these officers to act with impunity without fear of retribution.

73. Colonel Davis' and Louisiana State Police failure to terminate or properly discipline Brown, DeMoss, and Harper is part of its larger custom, police, or practice of failing to supervise, terminate, or properly discipline officers for unconstitutional, unlawful or otherwise improper conduct, and thereby encouraged DeMoss, Brown, and Harper to continue engaging in unlawful acts toward arrestees, including Harris.

74. Colonel Davis' negligence in professionally training, supervising, and retaining Officers DeMoss, Brown and Harper after the history of excessive force caused the officers to act with impunity and without fear of retribution.

75. The failure to properly supervise, train, and correct the behaviors of the Brown, DeMoss, and Harper was the moving force behind the beating they gave Antonio Harris.

76. Harris physical injuries and psychological trauma is a direct and proximate result of the acts and omissions by Colonel Davis and the Louisiana State Police.

77. As a direct and proximate result of the acts and omissions described herein, Antonio Harris suffered compensatory and special damages as defined under federal common law and in an amount to be determined by jury.

78. Plaintiff is entitled to recovery of costs, including reasonable attorneys' fees under 42 U.S.C. §1988.

79. The conduct described in all of the preceding paragraphs amount to negligence, wrongful acts and omissions in negligent training, hiring and supervision under La. C.C. art. 2315.

80. As a direct and proximate result of these wrongful acts and omissions by Colonel Davis and the Louisiana State Police, Antonio Harris has suffered pecuniary loss, pain, suffering, psychological trauma, and severe body aches and pain, in an amount to be determined by a jury.

**COUNT III – 42 U.S.C. § 1983 Deliberate Indifference and Cruel and Unusual Punishment**

81. Paragraphs 1-80 are incorporated by reference as if fully set forth herein.

82. The Richland Parish Sheriff's Office, the Richland Parish Detention Center and John Doe correction officers knew and could see that Antonio Harris had suffered serious injuries and was not doing well following his vicious beating.

83. Upon information and belief, the Richland Parish Sheriff's Office, the Richland County Detention Center, and the John Doe corrections officers heard Mr. Harris' repeated entreaties for medical assistance.

84. These defendants took no action to provide medical assistance to Mr. Harris.

85. The Louisiana State Patrol admitted in private text messages to beating

Mr. Harris so bad that he would feel it for a long time, ensure nightmares, and suffer in significant pain. Mr. Harris request for medical assistance were real, but they fell on deaf ears.

86. Defendant John Doe correction officers, the Richland Parish Sheriff's Office and the Richland Detention Center should have acted to secure the provision of appropriate medical care to Mr. Harris.

87. Mr. Harris was coughing up blood and had blood in his stool and urine each time he tried to use the restroom. His repeated pleas for medical assistance were ignored.

88. Notwithstanding their duty to provide medical care and conscious awareness to the risks posed to Defendant Harris when they failed to provide any medical attention, no one on staff at the Richland Detention Center or within with Richland Parish Sheriff's Office took any necessary and appropriate steps to reduce or eliminate the risks to Mr. Harris.

89. Upon information and belief, this is a custom and practice of the Richland Parish Sheriff's Office, the Richland Parish Detention Center, and the Richland Correctional Officers to ignore the medical needs of inmates.

90. These defendants violated the rights of Mr. Antonio Harris under the Eighth and Fourteenth Amendments to the United States Constitution to adequate medical care, to adequately trained staff, and to protection from harm by

substantially departing from the acceptable standards of care in the care and treatment of Mr. Harris' obvious injuries while he was in their custody. They were indifferent to his suffering and inhumane to ignore his needed medical treatment.

91. In the manner described above, these defendants subjected the Plaintiff to cruel and unusual punishment in violation of rights secured to the Plaintiff by the Eighth Amendment to the United States Constitution as enforced through section 1983 of Title 42 of the United States Code.

**PLAINTIFF DEMANDS A JURY TRIAL AS TO ALL ISSUES OF FACT HEREIN.**

### Prayer for Relief

WHEREFORE, Plaintiff Antonio Harris, prays for judgment against Defendants as follows:

1. As to Count I, a money judgment against Defendants Brown, DeMoss, and Harper for compensatory, special and punitive damages together with costs and disbursements, including reasonable attorneys' fees, under 42 U.S.C. § 1988 and prejudgment interest.

2. As to Count II, a money judgment against Defendant Colonel Davis and the Louisiana State Police for compensatory and special damages in an amount to be determined together with costs and disbursements, including reasonable attorneys' fees, under 42 U.S.C. § 1988 and prejudgment interests.

3. As to County II, a money judgment against Richland Parish Sheriff's Office, Richland Parish Detention Center, John Doe Correctional Officers for compensatory and special damages in an amount to be determined together with costs and disbursements, including reasonable attorneys' fees, under 42 U.S.C. § 1988 and prejudgment interests.

4. For the appointment of a receiver or similar authority to ensure that the Louisiana State Police, Colonel Davis, the Richland Parish Sheriff's Office, and the Richland Parish Detention Center properly trains and supervises.

5. For such other and further relief as this Court deems just and equitable.

RESPECTFULLY SUBMITTED this 18th day of May 2021.

**DORAN & CAWTHORNE, P.L.L.C.**

/s/ PRIDE J. DORAN
Pride J. Doran, #25035
Corrie R. Gallien #3417
Post Office Box 2119
521 East Landry Street (70570)
Opelousas, Louisiana 70571
Phone: (337) 948-8008
Facsimile: (337) 948-0098


DREYER STERLING, LLC

/s/ Michael T. Sterling
Michael T. Sterling
Georgia Bar No.745667
michael@dreyersterling.com
P.O. Box 89310
Atlanta, Georgia
30312(470) 354- 0600
*Pro Hac Vice Pending*

**PLEASE ISSUE SUMMONS TO SERVE DEFENDANTS**

Jacob Brown
Former Louisiana State Police Trooper
(address unknown at this time)

Dakota DeMoss, Louisiana State Police Trooper
Through Louisiana State Police Troop F
1240 LA-594
Monroe, LA 71203

George Harper, Louisiana State Police Trooper
Through Louisiana State Police Troop F
1240 LA-594
Monroe, LA 71203

Lamar Davis, Colonel Louisiana State Police
Through Louisiana State Police Troop A
17801 Highland Road
Baton Rouge, LA 70810

Louisiana State Police
Through the Louisiana Department of Public Safety
504 Mayflower Street
Baton Rouge, LA 70802

Richland Parish Sheriff's Office
Through Sheriff Gary Gilley
708 Julia Street, RM 113
Rayville, LA 71269

Richland Parish Detention Center
Through Warden Joel Weatherly
456 Highway 15
Rayville, LA 71269

Joe Doe Correctional Officers
In their Capacity as Richland Parish Correctional Officers