# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

ANTONIO HARRIS                          CIV. ACTION NO. 3:21-01332

VERSUS                                  JUDGE TERRY A. DOUGHTY

JACOB BROWN, ET AL.                     MAG. JUDGE KAYLA D. MCCLUSKY

### REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion for partial dismissal for failure to state a claim upon which relief can be granted [doc. # 49] filed by Defendants, Gary Gilley and Joel Weatherly, in their individual and official capacities. The motion is opposed. For reasons detailed below, it is recommended that the motion to dismiss be granted-in-part and denied-in-part.

### Background

On May 19, 2021, Antonio Harris filed the instant civil rights complaint under 42 U.S.C. § 1983 against various law enforcement personnel and other entities to recover compensatory and punitive damages for injuries that he sustained on May 23, 2020, when several Louisiana State Police troopers allegedly exercised excessive force against him following a traffic stop and vehicle chase, injuries which were compounded by his post-arrest alleged failure to receive adequate medical care for the ensuing month while confined at the Richland Parish Detention Center. (Compl.). Harris initially sued the following law enforcement officers and agencies, the Louisiana State Police ("LSP"); LSP Trooper Jacob Brown, in his individual capacity; LSP Trooper Dakota DeMoss, in his individual capacity; LSP Trooper George Harper, in his individual capacity; LSP Superintendent Lamar Davis, in his individual and official capacities;

the Richland Parish Sheriff's Office ("RPSO"); the Richland Parish Detention Center ("RPDC"); and John Doe RPDC corrections officers, in their individual capacities. *Id*.

In at least partial response to a motion to dismiss [doc. # 14] filed by Defendant, RPSO, Harris filed a First Supplemental and Amended Complaint ("FSAC") on September 9, 2021. (FSAC [doc. # 44]). An "amended complaint supersedes the original complaint and renders it of no legal effect, unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (citing *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir.1985)). Here, there is no indication that the supplemental and amended complaint adopted or referenced the earlier pleading. Therefore, the sole, operative complaint before the court is the FSAC.

In the FSAC, Harris effectively substituted: 1) the Department of Public Safety & Corrections ("DPSC") for the LSP; 2) Sheriff Gary Gilley, in his individual and official capacities, in lieu of the RPSO; 3) RPDC Warden Joel Weatherly, in his individual and official capacities, instead of the RPDC; and 4) Jane Doe and/or John Doe for the John Doe RPDC corrections officers. (FSAC). Harris also fleshed out some of his allegations against the parties. *Id*.

Harris listed three counts in the FSAC. In Count I, he asserted claims against LSP troopers Brown, DeMoss, and Harper under 42 U.S.C. § 1983 for subjecting him to excessive force in violation of the Fourth Amendment. *Id*., ¶¶ 51-72. He further alleged that each of the foregoing officers failed to intervene to prevent the use of excessive force upon him. *Id*. He also stated that the LSP troopers violated his Fourth and Fourteenth Amendment rights when they failed to render medical aid in response to both his cries for assistance and the visible injuries he

sustained from the beating. *Id*. Moreover, he alleged that the DPSC and Colonel Davis (in his individual and official capacities) had a policy of sanctioning and ignoring Fourth Amendment violations. *Id*. Harris requested punitive damages against the foregoing Defendants, plus an award of costs and attorneys' fees under 42 U.S.C. § 1988. *Id*.

In Count II, Harris listed claims for negligent training, hiring, and supervision under Louisiana Civil Code Article 2315 against the DPSC and Colonel Davis (in his individual and official capacities) for failure to properly supervise, train, and correct the behavior of DeMoss, Brown, and Harper. *Id*., ¶¶ 73-93. Although Harris purported to assert these claims under state tort law, he inexplicably requested compensatory and special damages under "federal common law," plus an award of costs and attorneys' fees under 42 U.S.C. § 1988. *Id*., ¶¶ 90-91.

In Count III, Harris asserted claims under 42 U.S.C. § 1983 against Sheriff Gilley and Warden Weatherly, in their individual and official capacities, for violating his rights under the Eighth and Fourteenth Amendments. *Id*., ¶¶ 94-108. Specifically, Harris alleged that Gilley, Weatherly, and/or Jane and John Doe corrections officers knew or should have known that he had suffered serious and debilitating injuries following the "vicious beating" inflicted upon him by the LSP officers. *Id*., ¶ 95. Harris added that Gilley, Weatherly, and the Jane and John Doe corrections officers heard his repeated entreaties for help and/or medical assistance, but took no action to provide him with medical assistance. *Id*., ¶¶ 96-97. In fact, Harris was bleeding externally and internally, coughing up blood, urinating blood, and defecating blood. *Id*., ¶ 100. Nevertheless, Gilley, Weatherly, and the Doe corrections officers made no attempt to provide him with medical attention. *Id*.

Harris further alleged that Gilley and Weatherly, in their individual and official

3

capacities, had a custom, practice, and/or policy of intentionally and recklessly depriving medical assistance to inmates, which effectively encouraged, sanctioned, and authorized corrections officers to disregard and ignore the medical needs of inmates, including Harris. *Id.*, ¶¶ 102, 104. Gilley and Weatherly had knowledge of a substantial risk of serious harm to Harris, but responded with deliberate indifference to his need for medication and treatment. *Id.* Moreover, Gilley and Weatherly, in their individual and official capacities, had a policy and custom of inadequately supervising, training, and/or correcting their officers, which resulted in a failure to discourage constitutional violations by the corrections officers. *Id.*

Although not included in any of his three counts, the FSAC also included allegations to support a claim for false detention and/or imprisonment against Gilley and Weatherly, in their individual and official capacities, and the Jane and John Doe corrections officers, stemming from Harris's month-long detention at the RPDC, despite his repeated entreaties to Sheriff Gilley and Warden Weatherly explaining that he was not the subject of an outstanding arrest warrant from Mississippi. *Id.*, ¶¶ 32-36. After one month, Harris was extradited to Mississippi on a warrant issued not for him, but for Antonia Harris, a female, at a time when Harris was but five years old. *Id.*, ¶ 40.

Finally, in addition to monetary damages, Harris prayed for appointment of a receiver to ensure that the LSP, RPSO, and RPDC employees receive proper training and supervision. *Id.*, Prayer.

On September 23, 2021, Defendants, Gary Gilley and Joel Weatherly, filed the instant motion to dismiss most all of Harris's claims against them for failure to state a claim upon which

relief can be granted.[1]  Specifically, Gilley and Weatherly asserted that Harris has no claim for wrongful detention or false imprisonment because, as it turns out, Harris had an initial appearance before a state court judge a mere three days after his arrest, whereupon bond was set at $37,500 for charges of aggravated flight, resisting an officer, improper lane usage, "DUS," speeding (100/55), red light, reckless operation, and four counts of driving on the shoulder. Under these circumstances, Gilley and Weatherly maintain that Harris's constitutional rights were not violated, and they are entitled to qualified immunity.

Gilley and Weatherly further argue that Harris's § 1983 claims against them for allegedly implementing policies and customs that led to the deprivation of his rights and/or for failure to train are meritless.  Specifically, Weatherly contends that he is not a "policymaker" under Louisiana law, and, thus, cannot be sued in his "official capacity."  Second, Gilley and Weatherly contend that Harris did not set forth requisite facts (as opposed to conclusory allegations) in the FSAC to establish that they established constitutionally offensive policies or customs, or that they failed to properly train RPDC employees.

On October 14, 2021, Harris filed his opposition to the motion to dismiss wherein he argued that the FSAC included sufficient facts to support official capacity claims against Gilley and Weatherly.  [doc. # 54].  He further emphasized that the fact that he was bleeding internally and externally demonstrated that Gilley and Weatherly were deliberately indifferent to his plight, which suffices to show that they had implemented an unconstitutional policy or custom and/or that they failed to train their correctional officers.

---

[1] The only claim not intended to be addressed by the motion is Harris's individual capacity claim for denial of medical care.  (M/Dismiss, Memo., pg. 4 n.10).

Harris further maintained that the FSAC sets forth a valid claim for false detention/imprisonment against Gilley and Weatherly, in their individual capacities. He argued that the facts alleged showed that he was held pursuant to a facially invalid warrant that had been issued in Mississippi when he was five years old for someone else. Consequently, he concluded that a bail hearing did not immunize Sheriff Gilley and Warden Weatherly from his claim for false imprisonment. Harris also stressed that Gilley and Weatherly were seeking dismissal pursuant to a Rule 12(b)(6) motion before he had had a chance to conduct any meaningful discovery.

Gilley and Weatherly did not file a reply brief, and the time to do so has passed. *See* Notice of Motion Setting [doc. # 50]. Accordingly, the matter is ripe.

### Standard of Review

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). A pleading states a claim for relief, *inter alia*, when it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ." Fed.R.Civ.P. 8(a)(2). Circumstances constituting fraud or mistake, however, must be alleged with particularity. Fed.R.Civ.P. 9(b).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007)). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. *Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between. *See*

6

*Iqbal, supra.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965. Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal, supra.* A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.* "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148 (5th Cir. 2010).

"The notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precision." *Gilbert v. Outback Steakhouse of Florida Inc.*, 295 Fed. Appx. 710, 713 (5th Cir. 2008) (citations and internal quotation marks omitted). Further, "a complaint need not pin plaintiff's claim for relief to a precise legal theory. Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of [his] legal argument." *Skinner v. Switzer*, 562 U. S. 521, 131 S. Ct. 1289, 1296 (2011). Indeed, "[c]ourts must focus on the substance of the relief sought and the allegations pleaded, not on the label used." *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013) (citations omitted). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (quoting *Bell Atl.*, 127 S. Ct. at 1958).

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

7

*Iqbal, supra.* (citation omitted). A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely. *Twombly, supra.* Nevertheless, a court is compelled to dismiss an otherwise well-pleaded claim if it is premised upon an invalid legal theory. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989).

When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted). However, courts may rely upon "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" – including public records. *Dorsey, supra*; *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citation omitted) (proper to take judicial notice of matters of public record).

## Analysis

A § 1983 suit may be brought against a party in its official or individual/personal capacity, as well as against a government entity. *Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th Cir. 2009). A § 1983 *personal-capacity* suit seeks to impose liability on a "government officer for actions taken under color of state law." *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358 (1991) (emphasis added). On the other hand, a suit against a party in its *official-capacity* is generally "another way of pleading an action against an entity of which an officer is an agent." *Goodman v. Harris Cty.*, 571 F.3d at 395 (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691-94, 98 S.Ct. 2018, n.55 (1978). Therefore, an official-capacity suit is treated as a suit against the real party in interest—the government entity—and not against the official personally. *Id.*

In this case, Harris sued Sheriff Gilley and Warden Weatherly in both their "individual" and "official" capacities under 42 U.S.C. § 1983.  The court will address the claims separately.

## I.    Individual Liability under § 1983

a)    <u>General Principles</u>

Section 1983 provides that any person who, under color of state law, deprives another of "any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ." *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citing 42 U.S.C. § 1983).  Section 1983, however, does not create any substantive rights; it simply provides a remedy for the rights designated therein.  *Id*.  "Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983."  *Id*.  (citation omitted).

To state a cognizable claim for relief under 42 U.S.C. § 1983, "a plaintiff must plead two—and only two—allegations . . . First, the plaintiff must allege that some person has deprived him of a federal right.  Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law."  *Arnold v. Williams*, 979 F.3d 262, 266-67 (5th Cir. 2020) (citation and internal quotation marks omitted).  Accordingly, a claim against a state actor in his personal-capacity need not be attributed to a governmental "policy or custom."  *Hafer, supra*.

The court emphasizes that supervisory officials are not liable under § 1983 for the actions of subordinates under any theory of vicarious liability.  *Turner v. Lieutenant Driver*, 848 F.3d 678, 695 (5th Cir. 2017) (citation omitted); *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) ("Section 1983 does not create supervisory or *respondeat superior* liability.").  Rather, to

impose individual liability against a supervisor under § 1983, plaintiff must establish each defendant's (1) "personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008) (citation omitted).[2]

In the absence of the supervisor's *personal participation in the events at issue*, a § 1983 plaintiff must demonstrate that "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Mesa, supra*; *Smith v. Packnett*, 339 Fed. App'x. 389, 393 (5th Cir. 2009) (citation omitted). Deliberate indifference entails a "conscious choice to endanger constitutional rights." *Id.* (citation and internal quotation marks omitted). Deliberate indifference normally requires more than a single instance of lack of training or supervision. *Id.*; *see Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 n.25 (5th Cir.2005) (noting that the Fifth Circuit has adopted the "standard of municipal liability—that is, requiring at least deliberate indifference—for supervisory liability").

In addition, when, as here, a plaintiff seeks money damages from government officials in their individual capacities under § 1983, the affirmative defense of qualified immunity is available to protect defendants "from liability for civil damages insofar as their conduct does not

---

[2] Supervisory liability obtains "if (1) [the supervisor] affirmatively participates in the acts that cause the constitutional deprivation, or (2) [the supervisor] implements unconstitutional policies that causally result in the constitutional injury." *Peña v. City of Rio Grande City*, 879 F.3d 613, 620 (5th Cir.2018) (quoting *Gates v. Tex. Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)). Insofar as Gilley and Weatherly contend that unconstitutional policies are irrelevant to individual capacity claims, *see* M/Dismiss, Memo., pg. 8, the argument is misplaced.

violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 815 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982)).  The qualified immunity doctrine balances two often conflicting interests C "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id*.  As such, "[t]he protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id*. (citations and internal quotation marks omitted).

In effect, qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000) (citing *Malley v. Briggs,* 475 U.S. 335, 343, 341, 106 S.Ct. 1092 (1986) (internal quotation marks omitted).

Qualified immunity is nominally characterized as an affirmative defense.  However, once raised by defendants, it devolves upon the plaintiff to negate the defense by showing that the officials' conduct violated clearly established law.  *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir.2008) (citation omitted).  Plaintiff's burden is two-pronged.  *Club Retro LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (quoted sources omitted).  First, a plaintiff must demonstrate that defendant(s) violated a constitutional right under current law.  *Id*.  "Second, [plaintiff] must claim that the defendant[s'] actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." *Id*.  (quoted source and internal quotation marks omitted).  The courts are "permitted to exercise their sound discretion in

deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (citation omitted).

A law is clearly established when there exists "controlling authority--or a 'robust consensus of persuasive authority'--that defines the contours of the right in question with a high degree of particularity." *Hogan v. Cunningham*, 722 F.3d 725, 735 (5th Cir. 2013) (other citations and quotation marks omitted). Although a case directly on point is not required, "existing precedent must have placed the statutory or constitutional question *beyond debate.*" *Id*. (citations and internal quotation marks omitted). Nonetheless, there is the "rare possibility that, in an obvious case, analogous case law is not needed because the unlawfulness of the [challenged] conduct is sufficiently clear even though existing precedent does not address similar circumstances." *Joseph on behalf of Estate of Joseph v. Bartlett*, 981 F.3d 319, 330 (5th Cir. 2020) (citations and internal quotation marks omitted).

In the end, the question becomes whether the right is "sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right." *Hogan, supra* (citations and internal quotation marks omitted). Because it is plaintiff's burden to establish that the challenged conduct violated clearly established law, the district court may, but is by no means obliged to undertake the clearly established law analysis on its own. *See Joseph, supra*.

When responding to a defendant's invocation of qualified immunity within the context of a motion to dismiss, the plaintiff need not "exceed the short-and-plain-statement standard of Rule 8." *Arnold, supra* (citation omitted). Instead, "a plaintiff seeking to overcome qualified

12

immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). In other words, plaintiff must plead qualified immunity facts with the "minimal specificity" required by *Twombly* and *Iqbal*. *Arnold, supra* ("an assertion of qualified immunity in a defendant's answer or motion to dismiss does not subject the complaint to a heightened pleading standard.").

Ordinarily, "qualified immunity claims should be addressed separately for each individual defendant." *Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 731 (5th Cir. 2018) (citation omitted); *see also Meadours v. Ermel*, 483 F.3d 417, 421–22 (5th Cir. 2007) (overruling district court's decision to consider officers' conduct collectively, merely because they acted in unison). However, "[s]eparate consideration does not require courts to conduct a separate analysis for each officer in those cases where their actions are materially indistinguishable, it merely requires them to *consider* each officer's actions." *Meadours*, 483 F.3d at 422 n.3.

b)    <u>Unlawful Detention/ False Imprisonment</u>

The Fifth Circuit has recognized a § 1983 cause of action for false imprisonment. *Whittington v. City of Cuero*, Civ. Action No. 06-0011, 2007 WL 951864, at *8 (S.D. Tex. Mar. 28, 2007) (citing *Harper v. Merckle,* 638 F.2d 848, 860 (5th Cir. Unit B March 1981)); *Sanchez v. Swyden*, 139 F.3d 464, 469 (5th Cir. 1998) ("we have held that illegal detention by way of false imprisonment is a recognized § 1983 tort . . ."). However, there must be proof that the official's actions went beyond mere negligence before that tort takes on constitutional dimensions. *Sanchez, supra*. Therefore, detention of an individual for a limited duration on the basis of a "facially valid . . . warrant and in spite of the prisoner's claims of innocence" will not

13

establish a constitutional violation. *Birdwell v. Livingston*, 327 Fed. App'x. 457, 459 (5th Cir. 2009) (citing *Baker v. McCollan,* 443 U.S. 137, 143–45, 99 S.Ct. 2689 (1979); *Sanchez v. Swyden*, 139 F.3d 464, 468 (5th Cir. 1998)). Nonetheless, "an official may be exposed to liability under § 1983 if he deliberately ignores exonerative evidence or fails to act upon known exculpatory information." *Id*. (citation omitted).

"To state a claim for false imprisonment, plaintiffs must allege (1) an intent to confine, (2) acts resulting in confinement, and (3) consciousness of the victim of confinement or resulting harm." *Whittington, supra* (citations and internal quotation marks omitted). In addition to the foregoing elements of a traditional false imprisonment claim, a claim for false imprisonment under 42 U.S.C. § 1983 requires deprivation of a constitutional right caused by the false imprisonment. *Id*. (citation omitted). One such constitutional right may be found in the Fourth Amendment, which protects against a pretrial deprivation of liberty both before and after the commencement of legal process. *Manuel v. City of Joliet, Ill.*, ___ U.S. ___, 137 S.Ct. 911, 917–18 (2017). Thus, a claim challenging pretrial detention falls within the scope of the Fourth Amendment. *Id*. In fact, "claims related to pretrial deprivations of liberty *must* be analyzed under the Fourth Amendment." *Whittington, supra* (citing *Albright v. Oliver,* 510 U.S. 266, 274, 114 S.Ct. 807 (1994) (emphasis added). The commencement of legal process does not expunge a Fourth Amendment claim for unlawful pretrial detention when the process received fails to establish probable cause that a crime was committed. *Id*.

Applying the foregoing considerations here, Harris alleged that he was detained at the RPDC for one month or longer, despite repeatedly trying to inform Sheriff Gilley and Warden Weatherly that no warrant had been issued for his arrest. (FSAC, ¶¶ 32-34). Harris faults Gilley

14

and Weatherly for failing to confirm that the warrant that purportedly formed the basis for his continued detention was not issued for him, but instead for a female named Antonia Harris, who had a different birth date than Harris (given that he was but five years old when the warrant was issued).  *Id.*

Harris's allegations suffice to allege more than mere negligence on behalf of Gilley and Weatherly.  While there may well have been a valid warrant issued for a female named Antonia Harris, with a birth date likely many years off from Harris's, the court cannot conclude at the pleading stage, that such an obvious case of mistaken identity constitutes mere negligence or inadvertence, especially when Harris repeatedly endeavored to bring the issue to Gilley and Weatherly's attention.

In an effort to overcome Harris's allegations, Gilley and Weatherly adduced state court records showing that Harris was brought before a state court judge on May 26 or 27, 2020, whereupon bail was fixed at $37,500 for the myriad charges stemming from the underlying traffic stop and Harris's subsequent flight from the officers.  (May 26, 2020 Order, *Louisiana v. Harris*, No ____ (5th JDC); M/Dismiss, Exh. A.[3]  Gilley and Weatherly contend that Harris's false imprisonment ended when the state court judge purportedly found probable cause for his arrest and fixed bail.  *See McMillon v. Richmond*, 400 Fed. App'x 878, 880 (5th Cir. 2010) (false imprisonment ends when bail is fixed).

While it is possible to infer that the state court judge made a probable cause

---

[3] In deciding a motion to dismiss, courts may rely upon public and state court records.  *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citation omitted) (proper to take judicial notice of matters of public record); *Patterson v. Mobil Oil Corp.*, 335 F.3d 476, 481 n.1 (5th Cir. 2003) (judicial notice of state court records)

determination at the time that he or she assigned bond for each of the stop and flight-related charges, *see State v. Adams*, 74 So.3d 686, 687 (La. 2011), that does not resolve the matter. Harris further alleged that, after one month of confinement at the RPDC, he was extradited to Mississippi on the invalid warrant. (FSAC, ¶¶ 35, 39-40). From the fact of Harris's eventual extradition, Gilley and Weatherly have not excluded the plausible inference that, on an unspecified date prior to the extradition, Harris's detention at the RPDC on account of the stop and flight-related charges, ended. At that point, Harris had a right to a hearing on the Mississippi warrant that apparently formed the basis for his continued detention and subsequent extradition. *See Mitchell v. Windham*, 469 So.2d 381, 386 (La. App. 3rd Cir. 1985) (under the facts of the case, an accused awaiting extradition is entitled to a hearing); La. Code Crim. P. Arts. 267-270 (*after a hearing in open court*, the judge shall commit the accused for thirty days if there is a reasonable ground to hold him awaiting extradition). Gilley and Weatherly, however, did not provide any state court records to show that Harris received a hearing on the Mississippi warrant, or that a Louisiana state court judge endorsed his continued detention whilst he awaited extradition on the facially inapplicable warrant.

In short, the state court records submitted by Gilley and Weatherly do not suffice to preclude Harris's otherwise plausibly pled § 1983 claim that he was falsely imprisoned by Gilley and Weatherly on an out-of-state warrant that, on its face, did not pertain to him. These allegations also suffice to support a claim for false imprisonment under state law.[4]

---

[4]    A false imprisonment claim under Louisiana law has two elements: "(1) detention of a person, and (2) the unlawfulness of such detention," i.e., "restraint without color of legal authority." *Easter v. Caldwell*, Civ. Action No. 14-0967, 2015 WL 1281022, at *12 (W.D. La. Mar. 20, 2015) (citing *Reese v. City of Baton Rouge,* 644 So.2d 674, 676 (La. App. 1st Cir. 1994).

As for the second prong of the qualified immunity analysis, it is beyond question that a jailer has a duty to ensure that inmates are timely released from prison. *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011). The court further finds that, on the facts as currently alleged, this situation presents the rare case where the unlawfulness of the challenged conduct is clear and obvious. At the risk of repetition, Harris alleged that, despite his repeated attempts to notify Gilley and Weatherly of their error, they continued to detain him and, in due course, extradited him on a warrant that was issued for someone of a different name, a different gender, and a vastly different age. No reasonable officer could believe that he or she could continue to detain someone on the basis of the foregoing, facially inapplicable warrant. Recall the maxim that qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Mendenhall, supra*. Harris's complaint plausibly alleges that Gilley and Weatherly's conduct falls to the level of at least one of the foregoing categories, such that they are not entitled to qualified immunity at the pleading stage.

## II.    Official-Capacity Claims

As stated above, official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099 (1985) (citation omitted). To establish municipal liability under § 1983, a plaintiff must prove that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort*

---

Harris did not assert a false detention/false imprisonment claim within any of the counts of the FSAC. Accordingly, Gilley and Weatherly "presumed" that Harris intended to assert the claim under § 1983. *See* M/Dismiss, Memo., pg. 13 n.15. However, Harris cited Louisiana law on false imprisonment in his opposition to the motion to dismiss, and, in any event, the facts alleged in the FSAC support a claim under state law.

17

*Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009); *see Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691-94 (1978). "A municipality is almost never liable for an isolated unconstitutional act on the part of an employee; it is liable only for acts directly attributable to it through some official action or imprimatur." *Peterson*, 588 F.3d 838 at 847 (internal quotations omitted). Further, municipalities are not liable under § 1983 on the theory of *respondeat superior. Id.*; *O'Quinn v. Manuel*, 773 F.2d 605, 608 (5th Cir. 1985).

The official policy requirement may be met in various ways, including written policy statements, regulations, ordinances, or "widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *James v. Harris Cty.*, 577 F.3d 612, 617 (5th Cir. 2009) (citations and internal quotations omitted). The existence of a custom or policy may be shown by demonstrating (1) a pattern of unconstitutional conduct by municipal actors or employees; or (2) a single unconstitutional act by a final policymaker. *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 169 (5th Cir. 2010).

"In a Section 1983 case, the burden of proving the existence of an unconstitutional municipal policy or established custom rests upon the plaintiff." *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989). "To proceed beyond the pleading stage, a complaint's description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (citation and internal quotation marks omitted). Therefore, to plausibly plead a widespread practice as required to support municipal liability, a plaintiff must describe more than the lone incident that gave rise to his own injury. *Id*. (citation omitted).

In his brief, Harris pointed to paragraphs 29-30, 37, and 105-106 of the FSAC to establish

that Gilley and Weatherly had implemented or endorsed unconstitutional policies or customs.

(Pl. Opp. Memo., pgs. 9-10).  Upon review, however, the foregoing provisions of the FSAC are

conclusory and detail no specific policy, custom, or any other history of similar incidents.  In

other words, Harris failed to allege facts to establish that anyone besides himself suffered

unlawful detention or inadequate medical care[5] as required to show that the Sheriff had an

unconstitutional policy or practice.  *See Thompson v. Hedrick*, 838 Fed. App'x. 121, 123 (5th

Cir. 2021) (plaintiff did not plead facts to show that the complained-of policy had been applied

in a widespread fashion or that it caused him to be denied medical care); *Peña, supra* (plaintiff

must do more than describe the incident that gave rise to his injury); *Prince v. Curry*, 423 Fed.

App'x. 447, 451 (5th Cir. 2011) (existence of one or two similarly situated incidents does not

plausibly suggest the existence of an unconstitutional policy or custom).

Harris also asserted that Gilley and Weatherly had failed to train their officers, which

represents yet another type of *Monell* claim.  *Hutcheson v. Dallas Cty., Texas*, 994 F.3d 477, 482

(5th Cir. 2021); *see Valle v. City of Houston*, 613 F.3d 536, 544 (5th Cir. 2010) ("The standard

applicable to a failure-to-train claim is the same as the standard for municipal liability.").  The

"failure to train can amount to a policy if there is deliberate indifference to an obvious need for

training where citizens are likely to lose their constitutional rights on account of novices in law

enforcement." *Id.* (citation omitted).  A failure-to-train claim requires plaintiff to "prove that (1)

the city failed to train or supervise the officers involved; (2) there is a causal connection between

---

[5] "As a pretrial detainee, [plaintiff] had a clearly established Fourteenth Amendment right not to be denied, by deliberate indifference, attention to his serious medical needs." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citing *Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir. 1996) (en banc)).

the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Hutcheson, supra* (citing *Peña*, 879 F.3d at 623)).

Deliberate indifference normally entails a "pattern of similar constitutional violations by untrained employees." *Id.* (citation omitted).  But even when evidence of a pattern is missing, "it is still possible to establish deliberate indifference through the single-incident exception." *Id.* (citation omitted).  The single-incident exception for a failure-to-train claim, however, is "extremely narrow." *Id.* (citing *Valle, supra*).  To succeed, the "plaintiff must prove that the highly predictable consequence of a failure to train would result in the specific injury suffered." *Id.*  Thus, for a violation to be "highly predictable," the municipality "must have failed to train its employees concerning a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face." *Hutcheson, supra* (citing *Littell v. Hous. Indep. Sch. Dist.,* 894 F.3d 616, 624-25 (5th Cir. 2018).  Ultimately, the single-incident exception *in the failure to train* context, "is generally reserved for those cases in which the government actor was provided no training whatsoever." *Id*. (citing *Peña*, 879 F.3d at 624).

Here, Harris did not allege facts to show that Gilley and Weatherly had a pattern of similar constitutional violations by untrained employees or that a specific government actor was provided no training whatsoever and that the training omission caused his constitutional deprivations. *See Hutcheson, supra*; *Peña, supra*.

Nevertheless, in addition to the single-incident exception to the failure-to-train claim, "[i]t is well-established that a single unconstitutional action by a municipal actor may give rise to municipal liability if that actor is a final policymaker." *Bolton v. City of Dallas, Tex.*, 541 F.3d

545, 548 (5th Cir. 2008) (citing *Woodard v. Andrus,* 419 F.3d 348, 352 (5th Cir. 2005); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 480; 106 S.Ct. 1292, 1298 (1986). Further, "[a]lthough a policymaker's single decision may be in effect a policy that creates liability for a municipality, the situations to which this exception applies are few and will create municipal liability only if the municipal actor is a final policymaker." *Louisiana Div. Sons of Confederate Veterans v. City of Natchitoches*, 821 Fed. App'x. 317, 320 (5th Cir. 2020) (citation omitted).

There is no question that a parish sheriff is a final policymaker. *Burge v. St. Tammany Par.*, 336 F.3d 363, 370 (5th Cir.2003); *Stuart v. Russell, et al.*, Civ. Action No. 21-01231, 2021 WL 4820244, at *4 (W.D. La. Oct. 15, 2021) (Doughty, J.); *Lester v. Caddo Par.*, Civ. Action No. 15-2008, 2017 WL 6610329, at *6 (W.D. La. Dec. 27, 2017) (citing *Craig v. St. Martin Parish Sheriff*, 861 F. Supp. 1290, 1300 (W.D. La. 1994) and LA. CONST. ART. 5, § 27). Therefore, because Harris alleged that his injuries stemmed from viable constitutional violations against Sheriff Gilley in his individual capacity, *see* discussion, *supra*, these same acts support single-incident *Monell* liability against Gilley as Sheriff of Richland Parish.

In the motion to dismiss, Weatherly contends that he is not a final policymaker, and therefore, not a proper defendant for a *Monell* claim.[6]  A more basic issue, however, is that, according to the FSAC, Harris sued Weatherly in his official capacity as warden of the RPDC.

---

[6] "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Valle*, 613 F.3d at 542 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)). Moreover, the proper defendant for a § 1983 *Monell* claim is the "official or government body with final policymaking authority over the person who committed the violation." *Lester, supra* (citing *inter alia*, *Burge v. Parish of St. Tammany*, 187 F.3d 452, 469 (5th Cir. 1999)). Therefore, an official capacity suit is viable *only* against the person(s) who is responsible for formulating official policy that caused the constitutional violation. *Stuart, supra* (citations omitted).

Moreover, an official-capacity suit is treated as a suit against the entity that the person represents.  However, this court consistently has held that the RPDC is not a juridical person capable of being sued.  *Johnson v. Richland Par. Det. Ctr.*, Civ. Action No. 18-1091, 2019 WL 3026987, at *3 (W.D. La. June 19, 2019), *R&R adopted*, 2019 WL 3021827 (W.D. La. July 10, 2019); *Perez v. Richland Par. Det. Ctr.*, Civ. Action No. 19-1124, 2019 WL 6038031, at *4 (W.D. La. Oct. 24, 2019), *R&R adopted,* 2019 WL 6003241 (W.D. La. Nov. 13, 2019); *Jeansonne v. Richland Par. Det. Ctr.*, Civ. Action No. 07-0405, 2007 WL 1537616, at *3 (W.D. La. Apr. 11, 2007).  Accordingly, Harris cannot bring an official capacity claim against Weatherly, which, in effect, seeks a judgment against the non-entity, RPDC.  Instead, this court has recognized that the RPDC is a corrections facility operated by the Richland Parish Sheriff. *Jeansonne, supra*.  As such, Sheriff Gilley, as final policymaker, is the only proper party against whom Harris may assert an official capacity claim for damages.  *Stuart, supra*; *Lester, supra*.

<u>**Conclusion**</u>

For the above assigned reasons,

IT IS RECOMMENDED that the motion for partial dismissal for failure to state a claim upon which relief can be granted [doc. # 49] filed by Defendants, Gary Gilley and Joel Weatherly, be GRANTED-IN-PART, and that Plaintiff's official-capacity claim only under 42 U.S.C. § 1983 against Defendant, Joel Weatherly, be DISMISSED, WITH PREJUDICE.  FED. R. CIV. P. 12(b)(6).

IT IS FURTHER RECOMMENDED that the motion for partial dismissal [doc. # 49] otherwise be DENIED.

Under the provisions of 28 U.S.C. '636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties

22

have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party=s objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

      **A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

      In Chambers, at Monroe, Louisiana, on this 22nd day of November, 2021.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE

23