UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

**ANTONIO HARRIS,** *Plaintiff*       **\***    **CIVIL ACTION NO. 3:21-CV-01332**

                                              **\***

**VERSUS**                              **\***    **JUDGE: TERRY A. DOUGHTY**

                                              **\***

**JACOB BROWN, ET AL,** *Defendants*    **\***    **MAG. JUDGE: KAYLA D. MCCLUSKY**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## PLAINTIFF'S DISCOVERY TO DEFENDANTS

TO:  **DaKota Moss**                                   **Jacob Brown**
      through his counsel of record,             through his counsel of record,
      C. Bryan Racer, Esq.                   Joshua J. Dara, Jr., Esq.
      **Assistant Attorney General**         Michael J. O'Shee, Esq.
      130 Desiard Street, Ste. 812        Steven M. Oxenhandler, Esq.
      Monroe, LA 71201                **Gold Weems**
                                     P.O. Box 6118
      **George Harper**                   Alexandria, LA 71307
      through his counsel of record,
      H. Bradford Calvit, Esq.
      Eli Meaux, Esq.
      **Provosty Sadler & deLaunay, APC**
      P.O. Box 13530
      Alexandria, LA 71315

     **NOW INTO COURT,** through undersigned counsel, comes **PLAINTIFF, ANTONIO**

**HARRIS**, who hereby propounds, to the above named Defendants, these *Requests for Admission*,

*Requests for Production of Documents*, and *Interrogatories*, pursuant to *Federal Rules of Civil*

*Procedure*; and further requests that the answers and responses are forwarded to undersigned

counsel at Doran & Cawthorne, PLLC, electronically or by mail, to: 529 E. Landry St., P. O. Box

2119, Opelousas, LA 70571, within the delays allowed by law.

### GENERAL INSTRUCTIONS AND DEFINITIONS

**A. Instructions**

   1.  These requests are served under Rules 26, 33, 34, and 36. Produce documents as they are kept in the usual course of business or label them to correspond to the categories below.

**EXHIBIT A**

2. If you claim any privilege or protection, provide a log that identifies the document or communication, date, author, recipients, subject matter, privilege claimed, and the basis with sufficient detail to evaluate the claim.
3. If any document once existed but no longer exists, identify the document, its last known custodian, the circumstances of its loss or destruction, and any retention or deletion policies implicated.
4. These requests are continuing. If responsive information is later discovered, supplement promptly as Rule 26(e) requires.
5. For each Interrogatory, identify all persons with knowledge and the documents supporting your answer.

## B. ESI Production Protocol

1. Produce emails and ESI in native or load file format with metadata fields including at minimum: Author, From, To, CC, BCC, Subject, Sent Date and Time, Received Date and Time, File Name, File Path, Created Date, Last Modified Date, Hash, Message ID, and Custodian.
2. Produce video from body worn, in car, transport, booking, holding, sally port, corridor, elevator, medical, interview and any other fixed or mobile cameras in native format with original metadata, including device serial number, camera ID, GPS, start and end timestamps, frame rate, resolution, audit logs, event logs, and any associated hash or checksum. Include chain of custody records for each file.
3. Produce mobile data terminal and radio logs in native text, CSV, or PDF with all metadata, including unit number, user ID, timestamps, message IDs, channel, tower, and any deletion or edit logs.
4. Texts, group chats, and messaging apps: produce in native with metadata and attachments. For ephemeral or end to end platforms, produce exports and device extractions where feasible, with a description of any technical limitations encountered.
5. If you propose alternative formats, confer in writing and identify any resulting metadata loss.

## C. Definitions

- **You** or **Your**: the responding party, including all officers, employees, agents, contractors, assigns, and anyone acting on your behalf.
- **State Police Defendants**: Louisiana State Police Troopers Brown, DeMoss, and Harper.
- **Incident**: the May 23, 2020 stop, pursuit, seizure, use of force, transport, booking, and all related events through Mr. Harris's detention and medical requests.
- **Document** and **Communication**: as in Rule 34(a)(1) and Rule 26. Includes emails, texts, MDT messages, chat, social media messages, reports, logs, photographs, audio, and video.
- **BWC**: body worn camera.
- **ICC**: in car camera or dash camera.
- **Video Evidence**: any moving image or audio recording, including BWC, ICC, transport unit camera, jail fixed cameras, booking cameras, interview room cameras, corridor and sally port cameras, cell cameras, and any third party recording.

- **Identify** (a person): name, current or last known title, employer, address, phone, email, and role in the Incident.
- **Identify** (a document): title, date, author, recipients, type, Bates range, and a brief description.

## REQUESTS FOR ADMISSION

### REQUEST FOR ADMISSION NO. 1:

Admit or deny that Mr. Harris exited his vehicle, lay prone, extended his arms away from his body, spread his legs, and surrendered.

### REQUEST FOR ADMISSION NO. 2:

Admit or deny that after Mr. Harris surrendered, he did not strike, kick, head-butt, threaten, or attempt to flee on foot.

### REQUEST FOR ADMISSION NO. 3:

Admit or deny that Trooper DeMoss struck Mr. Harris with a knee and open hand after Mr. Harris surrendered.

### REQUEST FOR ADMISSION NO. 4:

Admit or deny that Trooper DeMoss powered his body camera off during the Incident.

### REQUEST FOR ADMISSION NO. 5:

Admit or deny that Trooper Harper used a handheld flashlight as an impact weapon on Mr. Harris's head.

### REQUEST FOR ADMISSION NO. 6:

Admit or deny that Trooper Harper intentionally flipped his body camera so that it did not record video of his interaction with Mr. Harris.

### REQUEST FOR ADMISSION NO. 7:

Admit or deny that Trooper Brown pulled Mr. Harris's hair and applied downward force to Mr. Harris's head and back while Mr. Harris was on the ground.

**REQUEST FOR ADMISSION NO. 8:**

Admit or deny that none of the State Police Defendants rendered medical aid to Mr. Harris at the scene.

**REQUEST FOR ADMISSION NO. 9:**

Admit or deny that the LSP Use of Force report for the Incident left unanswered whether the Incident was captured on any department video camera system.

**REQUEST FOR ADMISSION NO. 10:**

Admit or deny that investigators later identified at least nine separate recordings related to the Incident, including both body worn and in car recordings.

**REQUEST FOR ADMISSION NO. 11:**

Admit or deny that State Police personnel exchanged text or mobile data terminal messages about the beating of Mr. Harris after transport to jail.

**REQUEST FOR ADMISSION NO. 12:**

Admit or deny the authenticity of the mobile data terminal thread quoted by investigators that includes statements such as "still digesting that ass whoopin," "he gonna be sore tomorrow for sure," and "warms my heart."

**REQUEST FOR ADMISSION NO. 13:**

Admit or deny that the arrest report did not disclose that video evidence existed of the Incident.

**REQUEST FOR ADMISSION NO. 14:**

Admit or deny that Mississippi did not seek extradition on the purported warrants that were cited at the stop.

**REQUEST FOR ADMISSION NO. 15:**

Admit or deny that the body worn and in car videos that exist depict Mr. Harris surrendering.

**REQUEST FOR ADMISSION NO. 16:**

Admit or deny that you have a duty to preserve all documents and ESI related to the Incident.

**REQUEST FOR ADMISSION NO. 17:**

Admit or deny that no responsive ESI or video evidence has been deleted, overwritten, or lost since the duty to preserve arose.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

Identify every person present at the scene of the May 23, 2020 incident, from first contact through transport, stating full name, agency, unit number, role, arrival and departure times, and current contact information.

**INTERROGATORY NO. 2:**

Describe, in chronological order, each act and action taken, by each State Police trooper made, during the process of stopping and placing Mr. Harris into custody and under arrest, on May 20, 2020. In your answer, identify: each act or action taken by whom, what technique or tool used during the act or action take, where on Mr. Harris's body the act or action occurred or impacted, and the purported justification.

**INTERROGATORY NO. 3:**

For each video device potentially capturing the incident at issue, identify the device's make, model, serial number, assigned user, camera ID, policy-required settings, and whether the device recorded audio and video, with reasons for any failure to record or interruptions.

**INTERROGATORY NO. 4:**

Explain why Trooper DeMoss's body camera powered off and why Trooper Harper's camera did not capture the interaction after landing on the ground, including policy citations and any discipline imposed.

**INTERROGATORY NO. 5:**

State whether Trooper Brown manually muted his camera during the pursuit and explain why.

**INTERROGATORY NO. 6:**

Identify all MDT, text, or chat groups to which any State Police Defendant posted about Mr. Harris, the participants, and the complete content of those communications.

**INTERROGATORY NO. 7:**

State every effort made to preserve all video and ESI related to the Incident, including the date litigation holds were issued, to whom, and which systems were placed on hold.

**INTERROGATORY NO. 8:**

Describe any edits, redactions, enhancements, or transcodings of any video, when performed, by whom, using what software and settings, and where the original source files are stored.

**INTERROGATORY NO. 9:**

Identify all complaints, investigations, and discipline concerning camera misuse, report falsification, excessive force, or failure to render aid relating to Brown, DeMoss, or Harper for five years before the Incident to present, including outcomes.

**INTERROGATORY NO. 10:**

Identify all training Brown, DeMoss, and Harper received regarding duty to intervene, duty to render aid, and camera operation in the two years before the Incident.

**INTERROGATORY NO. 11:**

State the facts supporting your assertion, if any, that Mr. Harris resisted or posed a threat after surrendering.

**INTERROGATORY NO. 12:**

Identify each public statement made by State Police about the Incident, the speaker, date, and basis for any factual claims.

**INTERROGATORY NO. 13:**

Describe any referral to a prosecutor for criminal charges against any State Police Defendant, charges approved, and the status and final disposition.

**INTERROGATORY NO. 14:**

Identify all evidence you contend supports that Mr. Harris had active extraditable warrants on May 23, 2020.

**INTERROGATORY NO. 15:**

State whether any of the *Use of Force* reviewers noted the blank "captured on any department video camera system" item, what follow up occurred, and any corrective action.

**INTERROGATORY NO. 16:**

Identify all nonpublic messaging platforms used by any State Police Defendant relating to the Incident, including Signal, WhatsApp, iMessage, or similar, and whether auto delete settings were enabled.

**INTERROGATORY NO. 17:**

Identify all persons who saw injuries to Mr. Harris at the scene of the Incident and describe any statements about his medical condition.

**INTERROGATORY NO. 18:**

State whether any State Police employee requested medical evaluation for Mr. Harris and, if so, when, to whom, and the outcome.

**INTERROGATORY NO. 19:**

Identify all vendors and software systems used to store, manage, or process BWC, ICC, MDT, radio, and evidence files related to the Incident.

**INTERROGATORY NO. 20:**

Describe all steps taken to search for and collect responsive ESI, by custodian and data source.

**INTERROGATORY NO. 21:**

Identify any potentially responsive data that is unavailable and explain why.

**INTERROGATORY NO. 22:**

State the basis for any claim that any portion of the videos or logs is non-authentic or unreliable.

**INTERROGATORY NO. 23:**

Identify any settlement, indemnity, or insurance coverage potentially applicable to the claims.

**INTERROGATORY NO. 22:**

If you contend that any Defendant acted in good faith or is entitled to qualified immunity, state all facts and documents supporting that contention.

**INTERROGATORY NO. 23:**

Identify by name, title, and department or office of employment, all persons (including supervisors, bureau of investigation personnel, internal affairs personnel, and other personnel) involved in the investigation of the State Troopers involved in the Incident.

**INTERROGATORY NO. 24:**

For the persons listed below (and any additional persons identified in your answer to *Interrogatory No. 23*) who were involved in the investigation, regarding the involvement in the Incident of State Trooper, George Harper, DaKota DeMoss, Larry Shappley, and Jacob Brown; indicate the following: 1) the name, address and best telephone number of his current employer; 2) current job title and brief description of role; 3) current contact information or last known address, telephone number, and email address; and 4) the contact person and address to send a notice for a deposition of said person:

1. Investigator Raymond Hughes-Criminal Investigative Division
2. Lt. Colonel M. Doug Cain, II -Assistant Superintendent, Louisiana State Police
3. Capt. Christopher S. Eskew –Commander, Internal Affairs, Louisiana State Police
4. Major Wayne Vidrine
5. Lt. Colonel Chavez Cammon
6. Captain John Peters
7. Sergeant Gustav Bethea
8. Sergeant Bruce Robinson
9. Larry Shappley

**INTERROGATORY NO. 25:**

Identify all parties involved in the transport and booking, through Mr. Harris's detention and medical requests, at the Richland Parish correctional center or parish jail where he was taken on May 23, 2020; related to the Incident.

**INTERROGATORY NO. 26:**

Please name, give a brief summary of the nature of the matter, and indicated the status of; any other investigation and lawsuit involving their official capacities as Louisiana State Troopers or police officer, in which George Harper, DaKota DeMoss, Larry Shappley, and/or Jacob Brown have been involved during the last 10 years.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1:**

All video evidence related to the Incident, including native BWC and ICC files from every responding unit, with complete metadata, audit logs, event logs, and chain of custody records.

**REQUEST FOR PRODUCTION NO. 2:**

All photographs, scene videos, drone footage, helicopter footage, or third party recordings. All MDT messages, car to car messages, dispatcher messages, and radio recordings relating to the Incident, including message threads quoted in investigative materials.

**REQUEST FOR PRODUCTION NO. 3:**

The complete arrest report file, drafts, redlines, and any supplemental reports.

**REQUEST FOR PRODUCTION NO. 4:**

The complete *Use of Force* file, drafts, redlines, review sheets, supervisor notes, and approvals including by Sgt. Bruce Robinson and Captain John Peters.

**REQUEST FOR PRODUCTION NO. 5:**

Any occurrence reports, incident recall logs, CAD logs, and AVL or GPS location data for each responding unit.

**REQUEST FOR PRODUCTION NO. 6:**

Body camera and in car camera assignment records, device serial numbers, settings, configuration files, firmware versions, and user manuals for the devices in use by Brown, DeMoss, Harper, Shappley, and any other responding personnel.

**REQUEST FOR PRODUCTION NO. 7:**

Camera audit logs and power on or off events for each device used during the Incident, including any logs reflecting a manual mute, power down, or camera repositioning.

**REQUEST FOR PRODUCTION NO. 8:**

Written policies, directives, and training in effect May 23, 2020 for use of force, duty to intervene, rendering medical aid, report writing, body camera and in car camera operation, retention, and disclosure.

**REQUEST FOR PRODUCTION NO. 9:**

Training files, certifications, discipline files, citizen complaints, prior use of force investigations, and separation or resignation materials for Brown, DeMoss, and Harper for five years before the Incident to present.

**REQUEST FOR PRODUCTION NO. 10:**

Communications with any prosecutor's office, the Attorney General, or any grand jury regarding the Incident or any criminal case arising from it, including charging decisions and dismissals.

**REQUEST FOR PRODUCTION NO. 11:**

All communications, texts, chats, or emails among State Police personnel referencing Mr. Harris, the Incident, the videos, or the MDT message thread.

**REQUEST FOR PRODUCTION NO. 12:**

Any preservation notices, litigation holds, or record freeze instructions issued about the Incident, plus identification of custodians and systems placed on hold.

**REQUEST FOR PRODUCTION NO. 13:**

Complete data dictionaries and retention schedules for BWC, ICC, MDT, CAD, and evidence management systems.

**REQUEST FOR PRODUCTION NO. 14:**

Any audit or internal affairs investigation into the failure to answer the "captured on any department video camera system" question on the Use of Force report.

**REQUEST FOR PRODUCTION NO. 15:**

Documents sufficient to show when each video file was first exported, copied, or shared and with whom.

**REQUEST FOR PRODUCTION NO. 16:**

Any chain of custody forms for physical evidence, including the flashlight used by Harper and any damaged property.

**REQUEST FOR PRODUCTION NO. 17:**

Any medical screening, aid, or care provided by State Police at scene or before booking.

Insurance policies or indemnity agreements that may cover the Incident or the claims asserted.

**REQUEST FOR PRODUCTION NO. 18:**

Any statements, interviews, or notes of witnesses, including the Franklin Parish deputy quoted as saying Mr. Harris "just fell out."

**REQUEST FOR PRODUCTION NO. 19:**

Personnel rosters and duty assignments for all responding troopers and supervisors on May 23, 2020.

**REQUEST FOR PRODUCTION NO. 20:**

Complaint data, audits, or investigations concerning Troop F practices related to excessive force, turning off cameras, or report falsification within five years before the Incident.

**REQUEST FOR PRODUCTION NO. 21:**

All drafts, edits, and final versions of public statements or press releases about the Incident.

**REQUEST FOR PRODUCTION NO. 22:**

Any communications with the Richand Parish jail personnel concerning booking, medical condition, transport, or housing of Mr. Harris.

**REQUEST FOR PRODUCTION NO. 23:**

Any third party or vendor communications regarding video extraction, repair, redaction, or enhancement.

**REQUEST FOR PRODUCTION NO. 24:**

Documents showing any destruction, overwriting, or loss of potentially responsive video or ESI and the reasons.

**REQUEST FOR PRODUCTION NO. 25:**

Any disciplinary decisions, resignation in lieu of termination documents, and Brady or Giglio notifications related to Shappley, Brown, DeMoss, or Harper.

**REQUEST FOR PRODUCTION NO. 26:**

Any photographs or video of Mr. Harris's injuries taken by State Police personnel.

**REQUEST FOR PRODUCTION NO. 27:**

The complete investigative file referenced in the materials you produced to criminal investigators.

**REQUEST FOR PRODUCTION NO. 28:**

A list of all known sources of potentially responsive ESI related to the Incident, by custodian, system, and data type.

**REQUEST FOR PRODUCTION NO. 29:**

Identify every copy or export of any BWC or ICC file related to the Incident, the person who exported it, the date, purpose, and where it is stored.

**REQUEST FOR PRODUCTION NO. 30:**

A copy of the criminal investigation or District Attorneys' files regarding the investigations of George Harper, DaKota DeMoss, Larry Shappley, and Jacob Brown; which resulted from the Incident.

Respectfully submitted,

**DORAN & CAWTHORNE, P.L.L.C.**

*/s/* Pride J. Doran_____
**PRIDE J. DORAN- LA BAR #25035**
529 East Landry Street (70570)
Post Office Box 2119
Opelousas, Louisiana 70571
Phone: (337) 948-8008
Facsimile: (337) 948-0098
pride@doranlawfirm.com

**AND**

*/s/* Michael T. Sterling_____
**MICHAEL T. STERLING-GA BAR #745667**
Michael T. Sterling & Associates
437 Memorial Drive, Suite A2
Atlanta, Georgia 30312
T : (470) 354- 0600
mike@miketsterlinglaw.com (*Pro Hac Vice*)
**Attorneys for Antonio Harris**

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a copy of the above discovery has been forwarded to all known counsel of record by electronic mail, on this **2nd** day of **April, 2026**.

_____/s/ *Pride J. Doran*_____
**PRIDE J. DORAN**

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

**ANTONIO HARRIS,** *Plaintiff*      \*      **CIVIL ACTION NO. 3:21-CV-01332**

          \*

**VERSUS**                   \*     **JUDGE: TERRY A. DOUGHTY**

          \*

**JACOB BROWN, ET AL,** *Defendants*     \*     **MAG. JUDGE: KAYLA D. MCCLUSKY**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## <u>PLAINTIFF'S DISCOVERY TO DEFENDANTS</u>

**TO:**   **Gary Gilley**
       **Joel Weatherly**
       through their counsel of record,
       **Forsch Rodrigue Arcuri, LLC**
       Blake J. Arcuri, Esq.
       Laura C. Rodrigue, Esq.
       Craig E. Forsch, Esq.
       Jason P. Wixom, Esq.

     **NOW INTO COURT,** through undersigned counsel, comes **PLAINTIFF, ANTONIO HARRIS**, who hereby propounds, to the above named Defendants, these *Requests for Admission*, *Requests for Production of Documents*, and *Interrogatories*, pursuant to *Federal Rules of Civil Procedure*; and further requests that the answers and responses are forwarded to undersigned counsel at Doran & Cawthorne, PLLC, electronically or by mail, to: 529 E. Landry St., P. O. Box 2119, Opelousas, LA 70571, within the delays allowed by law.

## GENERAL INSTRUCTIONS AND DEFINITIONS

### A. Instructions

1. These requests are served under Rules 26, 33, 34, and 36. Produce documents as they are kept in the usual course of business or label them to correspond to the categories below.
2. If you claim any privilege or protection, provide a log that identifies the document or communication, date, author, recipients, subject matter, privilege claimed, and the basis with sufficient detail to evaluate the claim.
3. If any document once existed but no longer exists, identify the document, its last known custodian, the circumstances of its loss or destruction, and any retention or deletion policies implicated.

4. These requests are continuing. If responsive information is later discovered, supplement promptly as Rule 26(e) requires.
5. For each Interrogatory, identify all persons with knowledge and the documents supporting your answer.

## B. ESI Production Protocol

1. Produce emails and ESI in native or load file format with metadata fields including at minimum: Author, From, To, CC, BCC, Subject, Sent Date and Time, Received Date and Time, File Name, File Path, Created Date, Last Modified Date, Hash, Message ID, and Custodian.
2. Produce video from body worn, in car, transport, booking, holding, sally port, corridor, elevator, medical, interview and any other fixed or mobile cameras in native format with original metadata, including device serial number, camera ID, GPS, start and end timestamps, frame rate, resolution, audit logs, event logs, and any associated hash or checksum. Include chain of custody records for each file.
3. Produce mobile data terminal and radio logs in native text, CSV, or PDF with all metadata, including unit number, user ID, timestamps, message IDs, channel, tower, and any deletion or edit logs.
4. Texts, group chats, and messaging apps: produce in native with metadata and attachments. For ephemeral or end to end platforms, produce exports and device extractions where feasible, with a description of any technical limitations encountered.
5. If you propose alternative formats, confer in writing and identify any resulting metadata loss.

## C. Definitions

- **You** or **Your**: the responding party, including all officers, employees, agents, contractors, assigns, and anyone acting on your behalf.
- **State Police Defendants**: Louisiana State Police Troopers Brown, DeMoss, and Harper.
- **Incident**: the May 23, 2020 stop, pursuit, seizure, use of force, transport, booking, and all related events through Mr. Harris's detention and medical requests.
- **Document** and **Communication**: as in Rule 34(a)(1) and Rule 26. Includes emails, texts, MDT messages, chat, social media messages, reports, logs, photographs, audio, and video.
- **BWC**: body worn camera.
- **ICC**: in car camera or dash camera.
- **Video Evidence**: any moving image or audio recording, including BWC, ICC, transport unit camera, jail fixed cameras, booking cameras, interview room cameras, corridor and sally port cameras, cell cameras, and any third party recording.
- **Identify** (a person): name, current or last known title, employer, address, phone, email, and role in the Incident.
- **Identify** (a document): title, date, author, recipients, type, Bates range, and a brief description.
- **Jail:** the Richland Parish Jail Mr. Harris was held related to the Incident arrest.

## REQUESTS FOR ADMISSION

### REQUEST FOR ADMISSION NO. 1:

Admit or deny that there is jail video which depicts Mr. Harris during the period of time he was in the jail's custody, related to the Incident arrest.

### REQUEST FOR ADMISSION NO. 2:

Admit or deny that no officer at the jail arranged for Mr. Harris to be transported for medical evaluation on the date of arrest.

### REQUEST FOR ADMISSION NO. 3:

Admit or deny that Mr. Harris requested medical care from any jail personnel, while he was in custody, related to the Incident arrest.

### REQUEST FOR ADMISSION NO. 4:

Admit or deny that Mr. Harris was never attended to by medical jail personnel, while he was in custody, related to the Incident arrest.

### REQUEST FOR ADMISSION NO. 5:

Admit or deny that you have a duty to preserve all documents and ESI related to the time period Mr. Harris's was in custody at the jail, related to the Incident.

### REQUEST FOR ADMISSION NO. 6:

Admit or deny that no responsive ESI or video evidence has been deleted, overwritten, or lost since the duty to preserve arose.

## INTERROGATORIES

### INTERROGATORY NO. 1:

Identify all personnel involved in transport, intake, booking, housing, supervision, and medical screening of Mr. Harris, including roles and shifts.

**INTERROGATORY NO. 2:**

Describe Mr. Harris's arrival, screening, booking, housing assignments, movements, and release or transfer, with timestamps.

**INTERROGATORY NO. 3:**

Identify every request by Mr. Harris for medical care and every observation by staff of bleeding, pain, or other symptoms, and state what actions were taken and when.

**INTERROGATORY NO. 4:**

Identify every video camera that may have recorded Mr. Harris at the jail, its location, ID, retention settings in effect, and whether it recorded during the relevant times.

**INTERROGATORY NO. 5:**

State whether any jail video related to Mr. Harris was overwritten or lost, when and why, and identify any efforts to retrieve backups.

**INTERROGATORY NO. 6:**

Identify all policies and training in effect on the date of arrest regarding medical evaluation at intake, emergent care, and responses to bleeding or reported serious pain.

**INTERROGATORY NO. 7:**

Identify any communications with State Police about Mr. Harris's condition, requests for care, or transfer, including dates, participants, and substance.

**INTERROGATORY NO. 8:**

Describe all preservation steps you took to retain video and records concerning Mr. Harris.

**INTERROGATORY NO. 9:**

Identify all complaints, investigations, or discipline relating to failure to provide medical care or preserve video from two years before the Incident to present.

**INTERROGATORY NO. 10:**

Identify all vendors and systems used to capture and store jail video and booking records and how retention is configured.

**INTERROGATORY NO. 11:**

Identify any photographs or videos taken of Mr. Harris at intake or during detention and who took them.

**INTERROGATORY NO. 12:**

If you contend that Mr. Harris refused care, state the date, time, staff present, and produce any refusal forms.

**INTERROGATORY NO. 13:**

Identify any grievances filed by Mr. Harris and their outcomes.

**INTERROGATORY NO. 14:**

Identify any law enforcement agency that requested copies of jail video related to Mr. Harris and what you produced.

**INTERROGATORY NO. 15:**

Identify any insurance, indemnity, or risk pool coverage potentially applicable to the claims.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1:**

All Video Evidence from Richland Parish Detention Center and Sheriff's Office facilities on the date of arrest and during Mr. Harris's detention, including exterior, sally port, intake, booking, holding cells, corridors, elevators, medical areas, interview rooms, and transport vehicles, with native files, metadata, audit logs, and chain of custody.

**REQUEST FOR PRODUCTION NO. 2:**

All logs of medical requests, medical screenings, sick call slips, nursing notes, watch sheets, and transport or hospital referrals for Mr. Harris.

**REQUEST FOR PRODUCTION NO. 3:**

All booking sheets, property logs, photographs, and incident or disciplinary reports relating to Mr. Harris.

**REQUEST FOR PRODUCTION NO. 4:**

CAD, radio, MDT, jail management system records, and emails concerning Mr. Harris, including communications with State Police.

**REQUEST FOR PRODUCTION NO. 5:**

Written policies and training in effect on the date of arrest regarding intake screening, the duty to summon medical care, medical emergencies, use of force in the jail, camera retention, and reporting.

**REQUEST FOR PRODUCTION NO. 6:**

All preservation notices, litigation holds, or record freezes issued about the Incident or Mr. Harris, identifying custodians and systems.

**REQUEST FOR PRODUCTION NO. 7:**

Camera assignment, retention, and overwrite settings for jail video systems in effect at the time, and any vendor contracts for those systems.

**REQUEST FOR PRODUCTION NO. 8:**

Any fixed camera audit logs, motion or alarm logs, and any gaps or outages during the relevant period.

**REQUEST FOR PRODUCTION NO. 9:**

All complaints, investigations, or discipline related to failure to provide medical care or to preserve video within five years before the Incident to present.

**REQUEST FOR PRODUCTION NO. 10:**

All communications with prosecutors or State Police concerning Mr. Harris's condition, requests for care, or transport.

**REQUEST FOR PRODUCTION NO. 11:**

Documents showing the time Mr. Harris arrived at the jail, all movements within the facility, and the time of any medical evaluation or refusal of care.

**REQUEST FOR PRODUCTION NO. 12:**

Insurance policies or indemnity agreements that may cover the Incident or claims asserted. Any destruction, overwriting, or loss of potentially responsive video or ESI and the reasons.

**REQUEST FOR PRODUCTION NO. 13:**

Personnel rosters and duty assignments for all booking and housing officers and supervisors on duty during Mr. Harris's intake and detention.

**REQUEST FOR PRODUCTION NO. 14:**

Any photographs or video of Mr. Harris's injuries taken at the jail.

**REQUEST FOR PRODUCTION NO. 15:**

The complete investigative or administrative file opened in response to any complaint or inquiry about Mr. Harris's treatment or missing footage.

Respectfully submitted,

**DORAN & CAWTHORNE, P.L.L.C.**

*/s/* Pride J. Doran_____
**PRIDE J. DORAN- LA BAR #25035**
529 East Landry Street (70570)

Post Office Box 2119
Opelousas, Louisiana 70571
Phone: (337) 948-8008
Facsimile: (337) 948-0098
pride@doranlawfirm.com

**AND**

  */s/* Michael T. Sterling_____
**MICHAEL T. STERLING-GA BAR #745667**
Michael T. Sterling & Associates
437 Memorial Drive, Suite A2
Atlanta, Georgia 30312
T : (470) 354- 0600
mike@miketsterlinglaw.com (*Pro Hac Vice)*
**Attorneys for Antonio Harris**

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the above discovery has been forwarded to all known

counsel of record by electronic mail, on this **2ⁿᵈ** day of **April, 2026**.

_____/s/ *Pride J. Doran*_____
**PRIDE J. DORAN**